*Electronically Filed 09/21/05*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| Mae R. Brown, | Case No. CV 04-09873-MLG |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| v. | |
| JO ANNE B. BARNHART, Commissioner of the Social Security Administration, | |
| Defendant. | |

**I.   Procedural History**

This is an action for judicial review of the Defendant Commissioner's final decision denying Plaintiff's application for Social Security Disability Income and Supplemental Security Income Benefits.

Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income payments on November 15, 2002. (Administrative Record ("AR") AR at 134-43). Her applications allege that Plaintiff has been disabled and unable to work since February 2, 1989, owing to hallucinations, chest pain, and a mental

impairment. (AR at 135). The claim was denied initially and on reconsideration. Two hearings were held on October 8,2003 and May 12, 2004 before Administrative Law Judge ("ALJ") Zane A. Lang [de novo?  Do I explain each hearing?]. Plaintiff, represented by counsel, testified at both hearings. (AR at 25-71 and 72-83). Vocational expert Richard Hunt testified at the first hearing and vocational expert Sandra Trost testified at the second hearing. (AR at 25 and 72).

In a decision dated May 20, 2004, the ALJ determined that Plaintiff was not entitled to a period of disability within the meaning of the Social Security Act. (AR at 21). Plaintiff filed a Request for Review with the Appeals Council and was denied review on October 15, 2004. Plaintiff commenced this action for judicial review.

//

## II.  Factual and Medical History

Plaintiff was born on August 4, 1961, and was 42 years old at the time of the hearings. She possesses an 11th grade education and has past work experience as a home care provider. (AR at 145) [or should I use the decision as the source?  The ALJ found that she has work experience as a domestic worker and home companion].

The record reveals that on July 24, 2001, Plaintiff received an initial assessment at Kreden Mental Health Center. Plaintiff reported a depressed mood, poor sleep, increased appetite, auditory hallucinations, and frequent crying spells for the past two years. The diagnosis was major depressive disorder, recurrent with psychotic

features, and a GAF score of 49.[1]  Plaintiff was subsequently seen in August 2001 at which time physchotropic medications were prescribed.

On April 3, 2002, Plaintiff was diagnosed with cardiomegaly by a physician at the Hubert H. Humphrey Comprehensive Health Center. (AR at 206). [this med record is confusing].

Plaintiff was next examined on January 18, 2003, for purposes of a Social Security evaluation, by board-certified internist Mark Borigini, M.D. and by psychiatrist Barry Edelman, M.D.. (AR at 16). During her consultative examination by Dr. Borigini, Plaintiff complained of mental problems which are relieved by current medications, a blood pressure problem, and an enlarged heart with chronic shortness of breath and resultant difficulty walking. (AR at 220). Dr. Borigini was of the opinion that Plaintiff could perform work-related activities at the medium exertional level, with some additional postural and environmental limitations. (AR at 222).

During her consultative examination by Dr. Edelman, Plaintiff reported continual psychotic symptoms for the past ten year. (AR at 277). She stated that she experiences auditory and visual hallucinations and panic attacks all the time. (AR at 277). Plaintiff also reported routine lapses in attention, concentration, and memory. (AR at 278). She also stated that she has recurrent suicidal thoughts that have culminated in episodic self-mutilation involving cuts on her arms with knives and razors. (AR at 278). Plaintiff also reported vague homicidal thoughts upon which she has not acted. She also reported suffering from insomnia. (AR at 278). Dr. Edelman administered the following tests: Mental Status Exam;

---

[1]  GAF 49 definition.

Bender Visual-Motor Gestalt Test - II; Trailmaking Test, Parts A and B; Wechsler Adult Intelligence Scale - III; Wechsler Memory Scale - III; Minnesota Multiphasic Personality Inventory - II. (AR at 276). The doctor also reviewed Plaintiff's records. [which ones?]. (AR at 276). Dr. Edelman's functional assessment, made from a psychological perspective only, indicates that Plaintiff (AR at 284).

On February 4, 2003, the Disability Determination Service ("DDS") concluded that Plaintiff "could lift and carry 50 pounds occasionally and 25 pounds frequently; can sit, stand, walk 6 hours in an 8-hour workday with occasional postural activities except no climbing ladder/rope/scaffolds; and should avoid extreme temperatures and unprotected heights. (AR at 250-57). Dr. Harrell Reznick, Ph.D., conducted a second psychological examination on December 15, 2003. Dr. Reznick was of the opinion that Plaintiff "would be able to perform simple and repetitive tasks with minimal supervision." (AR at 284). Dr. Fay Montegrande, M.D., conducted a second internal medicine consultative examination on December 17, 2003. Dr. Montegrande was of the opinion that Plaintiff could perform work-related activities at the sedentary exertional level, with some additional postural and environmental limitations. (AR at 291).

In his decision, the ALJ found that Plaintiff has not engaged in substantial gainful activity since her alleged onset date. (AR at 15). At step two of the sequential disability analysis the ALJ found that Plaintiff suffered from the following medically determinable impairments: obesity, affective disorder, mental retardation, and personality disorder. (AR at 16). The ALJ, at step three of the analysis, concluded however that these impairments were not severe enough, singly or in combination, to meet or medically

4

equal one of the impairments contained in the listings.  20 C.F.R., Part 404, Subpart P, Appendix I. (AR at 16).  At step four of the analysis, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform work-related activities at the medium exertional level, with some additional postural and environmental limitations.  (AR at 19).  The ALJ also found that Plaintiff has slight and moderate mental residual functional limitations.[2]  (AR at 19).  Based on these physical and mental RFCs, the ALJ determined that Plaintiff could return to her past relevant work as a domestic worker and a home companion as previously performed and as generally performed in the national economy.  (AR at 20).

[At the hearing, a vocational expert testified that...do we use both hearings? *]

In the parties' joint stipulation of issues and contentions, Plaintiff raises four claims of error.  She contends that the ALJ erred, first, in determining that Plaintiff's mental condition does not meet or equal the Listing 12.05(B) for mental retardation; second, in determining Plaintiff's mental residual functional capacity by improperly rejecting the limitations set forth by her treating physician; third, in determining Plaintiff's physical residual functional capacity [by improperly rejecting the opinion of Monteverde?]; and fourth, in determining that Plaintiff could return to her past relevant work or other work.  Defendant contends that the ALJ's decision is free from error and supported by substantial evidence.  This matter is ready for decision.

---

[2] Quote

1  \\
2  **III. <u>Standard of Review</u>**

3        Under 42 U.S.C. § 405(g), a district court may review the
4  Commissioner's decision to deny benefits. The Commissioner's or
5  ALJ's findings and decision should be upheld if they are free from
6  legal error and are supported by substantial evidence based on the
7  record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402
8  U.S. 389, 401 (1971); *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th
9  Cir. 2001). Substantial evidence means such evidence as a reasonable
10 person might accept as adequate to support a conclusion. *Richardson*,
11 402 U.S. at 401; *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir.
12 1996). It is more than a scintilla, but less than a preponderance.
13 *Reddick*, 157 F.3d at 720. To determine whether substantial evidence
14 supports a finding, the reviewing court "must review the
15 administrative record as a whole, weighing both the evidence that
16 supports and the evidence that detracts from the Commissioner's
17 conclusion." *Id.* "If the evidence can reasonably support either
18 affirming or reversing," the reviewing court "may not substitute its
19 judgment" for that of the Commissioner. *Id.* at 720-721.
20 \\
21 **III. <u>Discussion and Analysis</u>**
22     **(A)   <u>The ALJ Properly Determined that Plaintiff's Condition Did</u>**
23               **<u>Not Meet or Equal the Listing of Impairments</u>**

24    Plaintiff claims that the ALJ erroneously found that Plaintiff's
25 condition did not meet or equal the listing of impairments. In
26 particular, Plaintiff asserts that the ALJ erroneously rejected the
27 treating physician's records and thereby improperly found that her
28 condition satisfies the diagnostic criteria for mental retardation

12.05(B) and.  (Joint Stipulation at 12-14).  Under 12.05(B), a claimant is severely impaired and thus entitled to benefits if she is found to suffer from mental retardation which "refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period[3]" and obtains "[a] valid verbal, performance, or full scale IQ of 59 or less."  20 C.F.R., Part 404, Subpt. P, App. I.  Social Security regulations 20 C.F.R. § 416.929(d) and 20 C.F.R. § 416.920(d) provide that if a person's condition meets a listed impairment, benefits should be awarded.

Plaintiff asserts that her I.Q. scores, which were obtained during a second consultative psychological examination by Dr. Reznick on December 15, 2003, provide that her condition meets a listed impairment and that benefits should be awarded.[4]  Moreover, Plaintiff asserts that her school records indicate that her mental retardation manifested during the required developmental period.  However, Dr. Reznick is of the opinion that Plaintiff's language facility and less than optimal effort indicate that Plaintiff's actual levels of intellectual functioning appear to be significantly higher than the I.Q. scores obtained. (AR at 283).  Furthermore, in his evaluation of Plaintiff, Dr. Reznick reviewed Plaintiff's medical records. (AR at 278-79).

Although Dr. Reznick did not explicitly invalidate the scores, the ALJ chose to reject them based on the doctor's observations.  In

---

[3] i.e., the evidence demonstrates or supports onset of the impairment before age 22.

[4] Plaintiff obtained a verbal I.Q. score of 50, a performance I.Q. of 50, and a full-scale I.Q. of 45.

7

his decision the ALJ found that Plaintiff's learning disorder is a medically determinable impairment under 12.05, but that it does not satisfy the diagnostic criteria for mental retardation. (AR at 20). This finding is substantially supported and Plaintiff's claim is thus without merit.

To meet a listing, the evidence of record must be sufficient to establish the existence of every medical finding specified for that listing. *See Key v. Heckler*, 754 F.2d 1545, 1549-50 (9th Cir. 1985); 20 C.F.R. § 404.1525(d). A claimant has the burden of proving disability, including disability based on the listings. *See Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). The ALJ's decision to reject the I.Q. scores obtained during Dr. Reznick's examination was supported by substantial evidence and Plaintiff has not met her burden of providing sufficient evidence to support a finding that Plaintiff's condition meets or equals the listing of impairments. Accordingly, the Plaintiff's claim is without merit.

\\

### (B) **The ALJ Improperly Determined Plaintiff's Mental Residual Functional Capacity**

Plaintiff contends that the ALJ failed to give proper weight to the opinion of her treating psychiatrist at Kedren Mental Health Center ("Kreden"), and thereby improperly determined her mental RFC. In particular, Plaintiff complains that "[t]he ALJ rejected this assessment solely on the ground that no records from July 2001 through October 2002 are included in the record." (JS at 20). This argument, however, is based on a misreading of the ALJ's findings. A careful review of the ALJ's decision reveals that the ALJ found "virtually no treatment record" during the aforementioned period.

(AR at 19). The ALJ notes that Plaintiff was treated in July 2001 and August 2001 and then in January 2003. (AR at 19). A December 2002 report from Kreden however, indicates that Plaintiff visited Kreden monthly from July 2001 to October 2002, but there are no medical records in the record to substantiate this point. (AR 216). Plaintiff further contends that the ALJ erroneously rejected Kreden's record as sparse documentation predicated upon Plaintiff's subjective complaints and "devoid of any mental status examinations," which contradict "the essentially consensus opinion by the reviewing and the examining doctors." (AR at 19). Plaintiff's claim has merit.

Both the disability benefits claimant and the ALJ bear a regulatory responsibility for developing the evidentiary record. The claimant must produce medical evidence showing that she has an impairment, and how severe that impairment is during the time she claims she is disabled. 20 C.F.R. §§ 404.1512(c), 416.912(c). Before deciding that a claimant is not disabled, the ALJ must develop a claimant's complete medical history for at least the twelve months preceding the month in which the claimant files her application. The ALJ must make every reasonable effort to help the claimant get medical reports from the claimant's medical sources when the claimant gives permission to request the reports. 20 C.F.R. §§ 404.1512(d), 416.912(d). Moreover, the ALJ's special duty to fully and fairly develop the record and to assure that the claimant's interests are considered exists even when the claimant is represented by counsel. *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996).

The Kreden report, dated December 13, 2002, suggests that Plaintiff received treatment at the clinic during monthly visits between July 2001 and October 2002. Other than the July and August

2001 medical records and the December 2003 report, the record does not contain any evidence of these monthly visits to Kreden. In his opinion, the ALJ referred to the sparse medical records from Kreden for this time period and also referred to the December 2002 report that states that Plaintiff visited the clinic every month. (AR at 16 and 19). The ALJ should have known that the medical records were incomplete and in failing to develop Plaintiff's complete medical history from November 2001, at least twelve months preceding the month in which Plaintiff filed her application, violated his duty fully and fairly develop the record and to assure that Plaintiff's interests were considered. 20 C.F.R. §§ 404.1512(d), 416.912(d).

Once the record is complete, the weight accorded to the Kreden records should be reevaluated. The opinions of treating physicians are ordinarily to be given greater weight than the opinions of other physicians. *Aukland v. Massanari*, 257 F.3d 1033, 1037 (9th Cir. 2001); *Smolen*, 80 F.3d at 1285. A treating physician's opinion as to the nature and severity of an impairment must be given controlling weight if the opinion is well supported and not inconsistent with other substantial evidence. Soc. Sec. Ruling 96-2p; *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Even when not controlling, a treating physician's opinion is entitled to deference unless there are specific and legitimate reasons, supported by substantial evidence in the record, for its rejection. *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 829 (9th Cir. 1995)). Even infrequent treatment is consistent with the treating physician rule. *Ghokassian v. Shalala*, 41 F.3d 1300, 1303-304.

An ALJ may however disregard a treating physician's opinion whether or not that opinion is contradicted. *Andrews v. Shalala*, 53

F.3d 1035, 1041 (9th Cir. 1995) (an ALJ may credit opinion of non-treating source based on independent clinical findings over treating physician's opinion (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989))). If the treating physician's opinion is contradicted, and the opinion of a non-treating source is based upon independent clinical findings that differ from those of the treating physician, the opinion of the non-treating source may itself be substantial evidence on which the ALJ may rely. *Andrews*, 53 F.3d at 1041. Where, on the other hand, a non-treating source's opinion contradicts that of the treating physician, but is not based on independent clinical findings, or rests on clinical findings also considered by the treating physician, the opinion of the treating physician may be rejected only if the ALJ gives specific, legitimate reasons for doing so that are based on substantial evidence. *Id.*; *Morgan*, 169 F.3d at 600.

In its current incomplete state, the opinion of the treating psychiatrist is not controlling because it is neither well supported nor consistent with other substantial evidence. However, given that the ALJ failed to develop a complete medical record, the sparse and subjective documentation and lack of mental status examinations are not specific and legitimate reasons which justify the rejection of treating psychiatrist records. Accordingly, the court finds that the ALJ failed to develop a complete medical record and subsequently erred in his rejection of an incomplete medical record of a treating physician.[5]

---

[5] As noted above, Plaintiff also challenges to the ALJ's adverse credibility determination. (Joint Stipulation at 14-17). Because the ALJ failed to properly evaluate the treating doctors' opinions, and the record is not sufficiently developed to support a determination of

11

**(C) The ALJ Did Not Err in Determining Plaintiff's Physical Residual Functional Capacity**

Plaintiff contends that the ALJ improperly determined that she has the physical RFC to perform work-related activities at the medium exertional level, with some additional postural and environmental limitations. (AR at 19). Specifically, Plaintiff contends that the ALJ improperly rejected the opinions of Dr. Montegrande, a consultative physician, as to Plaintiff's residual functional capacity. (JS at 29). Dr. Montegrande, a board-certified consultative cardiologist, examined Plaintiff on December 17, 2003 and assigned Plaintiff a sedentary exertional level, with some additional postural and environmental limitations. (AR at 291).

The ALJ rejected Dr. Montegrande's opinions because they "are supported by the treatment records." (AR at 19). He then accepted the opinions of Dr. Borigini and the Disability Determination Service.

**(D) The ALJ Did Not Err in Concluding that Plaintiff Can Return to Her Past Relevant Work or Other Work**

Two vocational experts - different opinions. ALJ seems to cite to only one opinion and based on that single opinion determines that Plaintiff can return to past relevant work as a domestic worker and home companion, as previously performed and a generally performed in the national economy.

The ALJ found that Plaintiff has "past relevant work as a

---

disability without further proceedings, the Court will not decide whether the credibility issue would independently require reversal. However, the Court recommends that the ALJ consider all of Plaintiff's arguments when determining the merits of his case on remand.

1 domestic worker (DOT 354.377-014)[sic?], which is light and semi-
2 skilled with an SVP of 3; and home companion (DOT 354.377-014)
3 [sic?], which is medium and semi-skilled with an SVP of 3, as
4 performed light and unskilled with an SVP of 2."  (AR at 20).

**V.   Conclusion**

The decision whether to remand for further proceedings is within this Court's discretion. *Harman v. Apfel*, 211 F.3d 1172, 1175-1178 (9th Cir. 2000). Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *Id*. at 1179 ("the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings"); *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004). However, where there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate. *Bunnell v. Barnhart*, 336 F.3d 1112, 1115-16 (9th Cir. 2003); *see also Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003)(remanding case for reconsideration of credibility determination).

Here, there are outstanding issues that must be resolved before a determination of disability can be made because the ALJ did not provide sufficient findings to support the rejection of the treating doctors' opinions. Accordingly, remand is appropriate for the ALJ to further evaluate the medical evidence and to make appropriate findings. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989)(remanding case for reconsideration of treating physician's

13

opinion).

**ORDER**

For the reasons stated above, the Court finds that the ALJ's decision is not supported by substantial evidence.

Accordingly, it is **ORDERED** that this case be remanded to the Commissioner for further proceedings.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

Dated: September 21, 2005          */S/ Marc L. Goldman*

_____
Marc L. Goldman
United States Magistrate Judge